IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01318-DDD-JPO

TOBIN BEREZNAK,

     Plaintiff,

v.

ARROW ELECTRONICS, INC.,

     Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**James P. O'Hara, United States Magistrate Judge**.

     Plaintiff Tobin Bereznak asserts three causes of action against his former employer, Defendant Arrow Electronics, Inc., pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. Defendant filed the instant Motion to Dismiss Plaintiff's Complaint ("Motion") seeking dismissal of all of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). ECF 13. The Motion is fully briefed, and the Court finds that oral argument will not materially assist in its adjudication. As set forth below, the Court respectfully recommends that the Motion be **granted**.

## BACKGROUND

     For the purposes of this ruling, the Court accepts as true the factual allegations—as opposed to any legal conclusions, bare assertions, or conclusory allegations—that Plaintiff raises in his

Complaint.[1] *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint's factual allegations are "accepted as true" for purposes of Fed. R. Civ. P. 12(b)(6) analysis).

Plaintiff started working for Defendant Arrow Electronics, Inc., ("Arrow" or "Defendant") on July 7, 2018, as a Senior Data Engineer. ECF 1-1 ¶ 13. He generally worked from home, going into a small satellite office about once a month. *Id.* On September 8, 2021, Arrow sent an email directed to its "Colorado-based colleagues" regarding COVID-19 health and safety guidelines. ECF 1 ¶ 87; ECF 1-2 at 2. The email stated that "Arrow employees and contractors in Colorado will be required to be vaccinated by Dec. 1, 2021." ECF 1-2 at 2. On September 10, 2021, Plaintiff emailed his supervisor, Tara Gilley, and her supervisor, Mark Sakasai, asking, in full, "[b]y what authority will the vaccinations mentioned in [the September 8 email] be required?" ECF 1 ¶ 89; ECF 1-2 at 3. Ms. Gilley sent Plaintiff a message on September 13, 2021, stating she contacted Arrow's Human Resources ("HR") about Plaintiff's question, and she would update him when she heard more from HR "with where Arrow policy lands around requiring a vaccine (especially for a full time Work From home employee that has no exposure to other employees.)." ECF 1 at ¶ 90; ECF 1-2 at 4.

On October 5, 2021,[2] Plaintiff sent an "Affidavit of Declination of Offer for Medical Interventions, Products, and Devices" to Defendant's registered agent. ECF 1 at ¶ 91; ECF 1-2 at 5. In the document, Plaintiff stated that "there are no STATE OF COLORADO, PUBLIC HEALTH agent nor assignee granted authority that can legally require an employee, to be compelled to

---

[1] The Court also considers the "Affidavit in Support of Complaint" (ECF 1-1) and exhibits attached to the Complaint (collectively filed at ECF 1-2). *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) ("Exhibits attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss.").

[2] While the "Affidavit" is dated September 21, 2021, Plaintiff alleges he sent it on October 5, 2021. ECF 1 at ¶ 91; ECF 1-2 at 5.

testing, treatment, or medical devices," and he "ha[s] not given [his] implied nor express consent, nor agreed to, the new medical interventions contained in the email sent on September 8th, 2021." ECF 1-2 at 5. He further stated he "reserve[s] every right to refuse a vaccination and/or injection on religious and moral grounds, regardless of any real or perceived emergency, emergency declaration, and/or threat to public health." *Id.* at 6. Plaintiff then requested "the parties given notice by means of this document" to provide "information that would controvert and overcome this Affidavit" within ten days of receipt of the document. *Id.* at 7. Defendant did not respond to the document. ECF 1 ¶ 93.

On October 7, 2021, Gretchen Zech, head of Arrow's HR, sent Plaintiff a "Frequently Asked Questions" document stating that employees—including individuals designated as a "remote worker"—are required to provide proof they received all doses of a COVID-19 vaccine via the CLEAR Health Pass Application prior to December 1, 2021. ECF 1 ¶¶ 95, 98; ECF 1-2 at 15, 17. The document also provided information for employees who have a disability, medical condition, or sincerely held religious belief that prevents them from becoming fully vaccinated. ECF 1-2 at 16. Specifically, those individuals are directed to "[s]submit a request" for a medical or religious "accommodation via *HR Connect*, which requires completing necessary paperwork and engaging in an interactive process with *Arrow*." *Id*. The exemption directions continue that "[s]hould you need to request an accommodation, please do so as soon as possible to engage in the interactive process, and to meet [Arrow's] policy compliance date of December 1, 2021." *Id.* Employees granted a medical or religious exemption would still be required "to always wear a mask . . . and maintain appropriate social distance while in an Arrow facility or performing work on Arrow's behalf at any location aside from the employee's own home," and "likely be required to comply with any additional COVID-19 safety measures Arrow may implement." *Id.*

On October 11, 2021, Plaintiff had a video call with Christina Grandinetti, Arrow HR Business Partner, in which Plaintiff asked for the legal authority upon which Arrow imposed its COVID-19 policy and explained to Ms. Grandinetti that he already declined obtaining a COVID-19 vaccine in his September 21, 2021, "Affidavit." ECF 1 ¶ 104. Ms. Grandinetti advised Plaintiff to submit a request for a religious exemption through the online "HR Connect" portal. *Id.* Plaintiff asked Ms. Grandinetti for the terms and conditions of using the HR Connect portal, but she was unable to do so. ECF 1-1 ¶ 29.

On October 21, 2021, Plaintiff sent a second document to Defendant's registered agents. ECF 1 ¶ 105; ECF 1-2 at 22. In this document, titled "Notice of Religious Exemption Default, Opportunity to Cure," Plaintiff stated his "sincerely-held religious beliefs preclude [him] from using facial coverings, medical devices, medical testing, vaccine products, and medical information tracking systems." ECF 1-2 at 22. He then noted he had been provided with neither the terms of service nor "[a]n acceptable privacy policy" for HR Connect. *Id.* at 23. The document continued by alleging that Arrow's COVID-19 policy violated a number of federal and state laws and Plaintiff was presenting them "with an opportunity to cure." *Id.* at 23. Plaintiff then "invoke[d] . . . reasonable accommodations" for "[e]xercising his religious freedom," namely continuing to work at Arrow "without retaliation" and without being required to take part in "[t]racking of medical information . . . [v]accination products, medical products, or medical interventions . . . [and w]earing facial covering or using medical devices." *Id.* at 23–24. Plaintiff again requested written response within ten days of receipt of his "Notice." *Id.* at 24. Arrow did not respond to the "Notice." ECF 1 ¶ 106.

A few days later, on October 25, 2021, Plaintiff received a company-wide email stating that employees who did not register their "vaccine status" by December 1, 2021, would be

terminated on December 2, 2021. ECF 1 ¶ 107; ECF 1-2 at 42. The following week, on November 1, 2021, Plaintiff had a second call with Ms. Grandinetti. ECF 1 ¶ 108. Ms. Grandinetti repeated that Plaintiff should use the HR Connect platform to submit a religious exemption request. *Id.* Plaintiff did not want to use HR Connect as he did not want "to engage in online forms and hidden terms of use;" rather, he wanted his "Affidavit" sent to Arrow's registered agents accepted as his claim of religious exemption. ECF 1 ¶ 109; ECF 1-1 ¶ 35.

On November 15, 2021, Plaintiff received a "Retention Bonus" offer directing him to register on HR Connect to collect a $10,000 bonus payable one year from November 12, 2021, the date of the offer. ECF 1 ¶ 110; ECF 1-2 at 43. Plaintiff did not log into HR Connect to collect the bonus as he was "even more suspicious of the terms of use." ECF 1 ¶ 110.

On December 1, 2021, Plaintiff attempted to start work on his work computer but was denied access. ECF 1 ¶ 110; ECF 1-1 ¶ 37. That afternoon, Plaintiff's supervisor Mark Sakasai called Plaintiff on a video call and told Plaintiff he was fired because he failed to provide his vaccination status on the CLEAR Health Pass portal. ECF 1 ¶ 111; ECF 1-1 ¶ 37. Plaintiff requested a written termination letter from both supervisors Mark Sakasai and Tara Gilley. ECF 1 ¶ 112; ECF 1-2 at 44–46. They refused to provide one. ECF 1 ¶ 112; ECF 1-1 ¶ 38.

On February 10, 2022, Plaintiff submitted a Complaint with the Colorado Civil Rights Division ("CCRD") claiming he "was refused a reasonable accommodation based on my religion (creationist) and/or in retaliation for engaging in protected activity." ECF 1-2 at 47; ECF 1-1 ¶ 40. On April 4, 2022, the CCRD transferred Plaintiff's case to the Equal Employment Opportunity Commission ("EEOC"). ECF 1 ¶115; ECF 1-2 at 49. Two weeks later, on April 19, 2022, Plaintiff sent a letter to Gretchen Zech, head of Arrow's HR, and Tara Gilley, his former supervisor, stating he was "revoking [his] prior religious exemption" as he "was not educated at the time of [his]

rights under the ADA." ECF 1 ¶ 116; ECF 1-1 ¶ 42; ECF 1-2 at 51. Then, on June 15, 2022, Plaintiff submitted a revised complaint with the EEOC alleging retaliation and discrimination based on disability under the ADA. ECF 1 ¶ 115; ECF 1-1 ¶ 43; ECF 1-2 at 52–55. In the June 15, 2022, Charge of Discrimination, Plaintiff alleged Arrow regarded him "as having a contagious disease and as having an impairment of [his] immune system," considered him in need of medical treatment without any individualized medical assessment, and retaliated against him by firing him for not providing medical information and not taking medical treatments. ECF 1 ¶¶ 117–20; ECF 1-1 ¶ 44; ECF 1-2 at 52–55. On July 20, 2022, Arrow submitted a statement to the EEOC, and on September 26, 2022, Plaintiff submitted a rebuttal. ECF 1 ¶121–22; ECF 1-1 ¶¶ 45–46.

On February 24, 2023, the EEOC sent Plaintiff a right to sue letter. ECF 1 ¶ 125; ECF 1-1 ¶ 47; ECF 1-2 at 68. Plaintiff then initiated this case on May 24, 2023, asserting three claims against Defendant for (i) disability discrimination, (ii) retaliation on the basis of disability, and (iii) imposing prohibited disability-related inquiries and medical examinations. ECF 1.

## LEGAL STANDARDS

### I.    Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Federal Rule Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Twombly* requires a two-prong analysis.

First, courts must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are "legal conclusions," "bare assertions," or

merely "conclusory." *Iqbal*, 556 U.S. at 678, 680–81. Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," and "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Second, courts must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679. Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). It "refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)).

## II.    Treatment of a Pro Se Plaintiff's Complaint

A pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."  *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)).

It is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

## ANALYSIS

Although Plaintiff's Complaint and accompanying exhibits total 116 pages, his general claim is straightforward: he contends Defendant discriminated and retaliated against him based on a perceived disability related to his refusal to get a COVID-19 vaccine or request an exemption under Defendant's COVID-19 policy. *See generally* ECF 1. Defendant contends Plaintiff has failed to plausibly allege his claims under the ADA and that his Complaint should be dismissed with prejudice because his deficiencies cannot be remedied with new or more detailed factual allegations. ECF 13. The Court addresses each of Plaintiff's three claims in turn.

### I.    Disability Discrimination

The ADA prohibits covered employers from discriminating against "a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a prima facie case for discrimination under the ADA, Plaintiff must establish that (1) he is disabled; (2) he was qualified, with or without reasonable accommodation, to perform the essential function of his job; and (3) his employer discriminated against him because of his disability. *Robert v. Bd. of County Comm'rs,* 691 F.3d 1211, 1216 (10th Cir. 2012). Defendant argues Plaintiff's discrimination claim fails because he has not plausibly alleged the first or third elements of his claim, that he was disabled as defined by the ADA or that Arrow discriminated against him because of his alleged disability. ECF 13 at 6–11. Because the Court agrees that Plaintiff has not plausibly alleged he was disabled under the ADA, the Court addresses only the Parties' arguments as to this element below.

8

An individual has a "disability" under the ADA if he (1) has "a physical or mental impairment that substantially limits one or more major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff is clear he is not alleging he had an actual physical or mental impairment, rather Plaintiff asserts his claim "under both the 'regarded as' and 'record of' prongs of the ADA." ECF 1 ¶ 137. Thus, Plaintiff contends that he was discriminated against because Arrow "regarded" him as being impaired or because Arrow treated him as having a "record of" an impairment. The Court begins with whether Plaintiff has alleged he was "regarded as" having a physical or mental impairment.

## A. "Regarded As" Being Disabled

As to the "regarded as" prong, Plaintiff alleges that Arrow, "through its 'Covid policy,'" treated Plaintiff "as if he has an on-going and indefinite condition of impairment that warrants the mitigation measures outlined in its policy." *Id.* ¶¶ 142–43. Stated differently, Plaintiff contends that the "several medical treatments, tests and inquiries" imposed by Defendant through its "Covid policy" "demonstrate that defendant perceive[d] plaintiff as a direct threat to others unless plaintiff [was] treated by mitigation measures." *Id.* ¶ 144. Defendant argues such allegations fail to show Arrow "regarded" Plaintiff as disabled. ECF 13 at 7–11. First, if Plaintiff is claiming Arrow regarded him as disabled because he was at risk of contracting COVID-19, Defendant proffers that being unvaccinated is not a disability. *Id.* at 8. Second, if Plaintiff is claiming Arrow regarded him as infected, and therefore disabled, Defendant contends that being infected with COVID-19 is not considered a disability. *Id.* at 8–9. In response, Plaintiff clarified his claim as follows:

> Plaintiff alleged that he is <u>perceived as a direct threat of a contagious disease</u>. During the "Covid pandemic" narrative, the CDC, the government, media, employers, etc, perceived that everyone presented a threat of contagious disease. Arrow adopted a "Covid policy" which admits, on its face, that all employees are considered threats of contagious disease. Arrow implemented medical treatments for all employees to mitigate the perceived threat. Then Arrow proceeded to <u>misclassify all "untreated" employees as if they still presented an on-going threat</u>, and the "untreated" employees were misclassified as too impaired to work unless they were treated. This is the factual basis of plaintiff's claim that he was regarded as a direct threat and that his employer continued to misclassify him as impaired because he was "untreated."

ECF 17 at 9 (emphasis in original). Defendant replies, among other things, that "being regarded as a direct threat is not a disability under the ADA," and the direct threat standard Plaintiff appears to be referencing is a standard used by courts to assess the second element of a discrimination claim, whether an individual is "qualified" to perform the essential functions of their job. ECF 18 at 5.

Contrary to Plaintiff's assertions that his is a case of first impression, ECF 1 ¶ 76, claims identical to his above have been made and universally rejected by federal courts across the country. Courts have consistently held that being regarded as "untreated" in this context, or unvaccinated for COVID-19, does not establish that an individual is disabled under the ADA. *See, e.g.*, *Applegate v. St. Vincent Health, Inc.,* No. 22-cv-01097, 2023 WL 3603975, at *3 (S.D. Ind. May 23, 2023) ("Plaintiffs' unvaccinated status cannot plausibly support a claim that Defendants regarded them as disabled under the ADA. . . . Plaintiffs' efforts to characterize their unvaccinated status as a perceived contagiousness by Defendants is a distinction without a [difference] as unvaccinated status is a proxy for contagiousness."); *Kim v. PGA Tour*, No. 23-cv-00441, 2024 WL 280297, at *5 (M.D. Fla. Jan. 25, 2024) (rejecting an ADA claim premised on an employer's alleged perception that employees were "susceptible to COVID-19" because of their unvaccinated status); *Shigley v. Tydings & Rosenberg LLP*, No. 23-cv-02717, 2024 WL 1156613, at *6 (D. Md.

Mar. 18, 2024) ("As far as the Court is aware, every court to have considered this issue has reached the same conclusion, that a person's unvaccinated status does not mean that they are "regarded as" disabled for the purposes of the ADA.") (collecting cases).

Quite simply, the fact that an individual *could get* an infectious disease or that the individual's employer acknowledges that they could contract that infectious disease is not a disability. *See, e.g.*, *Gallo v. Washington Nationals Baseball Club, LLC*, No. 22-cv-01092, 2023 WL 2455678, at *4 (D.D.C. Mar. 10, 2023) (holding that the plaintiff failed to allege a plausible disability discrimination claim because the "regarded as" prong of the ADA's definition of disability "does not cover [a] case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future."); *West v. Scott Lab'ys, Inc.*, No. 22-cv-07649, 2023 WL 2632210, at *4 (N.D. Cal. Mar. 24, 2023) (rejecting plaintiff's argument his employer "regarded as" disabled because it "perceived him as 'infected or may in the future become infected with a deadly, infectious disease'"); *Johnson v. United Parcel Serv., Inc.*, No. 23-cv-00545, 2023 WL 11796098, at *5 (N.D. Ga. Oct. 31, 2023) ("The takeaway is this—a physically healthy employee who is merely deemed by her employer to be susceptible to future illness is not, on that basis, perceived to suffer an impairment.").

Indeed, Plaintiff's position on this matter is contrary to the spirit animating the ADA. The ADA seeks to "assure equality of opportunity" for individuals with disabilities or perceived to have disabilities. 42 U.S.C. § 12101(a)(7). Importantly, "to be perceived as having a disability, one must be perceived as different from most people in the general population." *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 169 (2d Cir. 2024). Thus, the ADA's concerns are not implicated where, as here, an employer views and treats all employees the same, such as through adopting *company-wide* policies applicable to every employee. That, however, is precisely what Plaintiff

11

takes issue with. He claims that Arrow's company-wide COVID-19 policy regards "*all employees*
[to be] threats of contagious disease" and "implemented medical treatment for *all employees*."
ECF 17 at 9 (emphasis added). Applying Plaintiff's logic, Arrow would then regard all of its
employees as disabled, which is untenable and undermines the ADA's purposes. *See Speaks v.
Health Sys. Mgmt., Inc.*, No. 22-cv-00077, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022)
("Simply put, inferring that the Company classified [plaintiff] as impaired by requiring her to
become vaccinated or seek an exemption would mean that Health Systems considered all its
employees to have an 'impairment,' which is of course not a plausible inference."); *Shklyar v.
Carboline Co.*, 616 F. Supp. 3d 920, 926 (E.D. Mo. 2022) (similar). Ultimately, an employer
adopting company-wide safety policies does not imply a perceived impairment to any of its
employees or create a corporate assumption of disability. *See Sharikov*, 103 F.4th at 169; *Jorgenson
v. Conduent Transp. Sols., Inc.*, No. 22-cv-01648, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023)
("Conduent's decision to protect its workplace by requiring its employees to attest to their
vaccination status—and in some cases, to wear masks—does not plausibly reflect a determination
or belief that any of its employees are disabled or impaired.").

Relatedly, to the extent Plaintiff alleges Arrow regarded him as disabled because it regarded
him as "a direct threat of a contagious disease"—i.e., as infected with COVID-19—Plaintiff's
claim still fails. Under the ADA, being regarded as disabled does not apply to impairments that are
"transitory and minor," or impairments with an actual or expected duration of six or fewer
months. 42 U.S.C. § 12102(3)(B). Federal courts have consistently held that COVID-19 is
"transitory and minor," as contemplated by § 12102(3)(B). *West*, 2023 WL 2632210, at *4
(collecting cases); *Lundstrom v. Contra Costa Health Servs.*, No. 22-cv-06227, 2022 WL
17330842, at *5 (N.D. Cal. Nov. 29, 2022) (collecting cases). Thus, allegations that an individual

was "regarded as" infected with COVID-19 cannot support an ADA claim. *See, e.g.*, *Linne v. Alameda Health Sys.*, No. 22-cv-04981, 2023 WL 3168587, at *2 (N.D. Cal. Apr. 28, 2023) ("[B]ecause COVID-19 is an impairment that is considered transitory, even being regarded as having, or potentially contracting, COVID-19 is being regarded as having an impairment that is transitory—and therefore falls outside the scope of the definition of disability under 42 U.S.C. § 12102(1)(C)."); *Monegas v. City & Cnty. of San Francisco Dep't of Pub. Health*, No. 22-cv-04633, 2023 WL 5671933, at *2 (N.D. Cal. Sept. 1, 2023) ("Because COVID-19 itself is generally transitory and therefore not considered a disability under ADA, being perceived as having COVID-19 is therefore also not a disability under the ADA."); *Librandi v. Alexion Pharms., Inc.*, No. 22-cv-01126, 2023 WL 3993741, at *7 (D. Conn. June 14, 2023) ("To the extent that Librandi alleges that Alexion regarded her as disabled because it regarded her as having COVID-19, . . . that claim also fails.").

At bottom,  this Court agrees with the reasoning proffered in the many cases cited above, and likewise concludes that Plaintiff has not adequately alleged that he was regarded as disabled.

## B.  "Record Of" Being Disabled

Plaintiff also claims that he is disabled under the ADA because Arrow "made a record of disability by classifying plaintiff as an 'untreated' employee" and Arrow's "'Covid policy' . . . misclassifie[d] plaintiff as having an impairment." ECF 1 ¶¶ 152–53.  To state a claim for disability discrimination based on a "record of" a disability, a plaintiff must plausibly allege that he has "a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment." 29 C.F.R. § 1630.2(k)(2). Plaintiff fails to satisfy either requirement.

First, for the reasons discussed in the "Regarded As" section above, Plaintiff fails to allege he has a history of an impairment that substantially limited one or more major life activities. Being "untreated" or unvaccinated is not an impairment, let alone one that limited any of Plaintiff's major life activities. *E.g.*, *Sharikov*, 103 F.4th at 170 ("A record that an employee is not vaccinated does not imply that the employee has 'a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population.'"); *see also Speaks*, 2022 WL 3448649, at *5 (explaining that "[r]efusing to get a vaccine required by an employer is not itself an 'impairment' of any sort[,]" but instead "reflects a personal choice [that] cannot be considered an impairment under the ADA"). Thus Plaintiff's "history" of being unvaccinated cannot sustain his claim. Further, Plaintiff does not allege he has a history of contracting COVID-19. *See* generally ECF 1. Even if he had, actually being infected with COVID-19—thereby being "a direct threat of a contagious disease"—is not be an impairment that substantially limited Plaintiff's life activities. *West*, 2023 WL 2632210, at *4 ("A record that an employee has a condition that is not a disability does not satisfy the ADA requirements for disability discrimination."); *Lundstrom*, 2022 WL 17330842, at *5 (same).

Plaintiff similarly fails to allege he was misclassified as having an impairment that substantially limited one or more major life activities. Plaintiff claims Arrow "misclassifie[d] [him] as having an impairment," ECF 1 ¶ 153 and "misclassified him as too impaired to work," ECF 17 at 9. Although Plaintiff does not specify what the alleged impairment is, the Court understands Plaintiff's claim to be that Arrow misclassified him as being "untreated," unvaccinated, and "a direct threat of a contagious disease." As these are not impairments, even if

Arrow had a record of such information,[3] it would not support Plaintiff's claim. *See, e.g.*, *Sharikov*, 659 F. Supp. 3d at 280 ("Plaintiff has failed to plausibly allege that making a record of his vaccination status, in accordance with the policy, constituted making a record of an impairment that substantially limits one or more major life activities.); *Linne*, 2023 WL 3168587, at *2 ("[A] notation that Plaintiff is 'unvaccinated' does not indicate that Defendant recorded Plaintiff as having a disability."); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-cv-2936, 2023 WL 2163774, at *4 (stating that an employer does not misclassify employees "merely by requiring them to be vaccinated" and noting that "[o]ther courts have rejected this argument, with good reason").

Additionally, Plaintiff fails to allege that the impairments of being "untreated" or "a direct threat of a contagious disease" substantially limited his major life activities "when compared to most people in the general population." 29 C.F.R. § 1630.2(k)(2). As noted above, Plaintiff's own allegations as to Arrow's COVID-19 policy reflect that the policy applies equally to all Arrow employees. *E.g.*, ECF 1 ¶ 32 ("The policy perceives *all employees* as impaired . . ." (emphasis added)); *id.* ¶ 34 ("The policy classified all 'untreated' employees as "direct threats" who have an impairment which needs treatment."); *id.* ¶ 38 ("The policy makes a record of impairment via the employer's written communication to *all employees* and to 'untreated' employees." (emphasis added)); *id.* ¶ 39 ("The policy imposes mitigation measures upon <u>all workers</u> . . ." (emphasis in original)). Inferring that Defendant misclassified Plaintiff as impaired by requiring him to become

---

[3] Plaintiff's allegations are clear he refused to provide Defendant with either his vaccination status or a request for an exemption because "he did not want to engage with online forms." *E.g.*, ECF 1 ¶ 109. Thus, Arrow's records could not have contained information "misclassifying" Plaintiff as "untreated." *See Jorgenson*, 2023 WL 1472022, at *4 ("In fact, Conduent's records could not contain anything about his vaccination or other medical status, since he never provided that information to the company.").

vaccinated or seek an exemption would mean that Arrow misclassified all of its employees to have such "impairments," which is simply not plausible. *E.g.*, *Shklyar*, 616 F. Supp. 3d at 925 ("Given the general applicability of [defendant]'s COVID-19 policies, [plaintiff]'s conclusory allegation that [defendant] misclassified her as having a disability is implausible."); *Jorgenson*, 2023 WL 1472022, at *4 ("Merely requiring Plaintiff to follow a COVID-19 safety policy applicable to all employees does not support the inference that [the employer] classified Plaintiff as disabled under ADA."); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 23-cv-00466, 2024 WL 3289475, at *2 (2d Cir. July 3, 2024); *Speaks*, 2022 WL 3448649, at *5. Accordingly, Plaintiff fails to state a claim for disability discrimination based on a "record of" a disability.

In sum, because Plaintiff has not plausibly alleged that Arrow regarded him as having a disability nor plausibly alleged that he has a record of having a disability, he has failed to plausibly allege an essential element of his discrimination claim: that he is disabled within the meaning of the ADA. For this reason, Plaintiff's discrimination claim fails, and the Court recommends it be dismissed.

## II. Retaliation

Plaintiff next claims that Defendant retaliated against him by imposing "materially adverse changes in the terms and conditions of employment" because of Plaintiff's opposition to Defendant's "Covid policy." ECF 1 ¶¶ 189, 223–28. To state a prima facie case of retaliation under the ADA, an employee must show that: (1) "he engaged in protected opposition to discrimination; (2) a reasonable employee would have found h[is] employer's subsequent action to be materially adverse; and (3) a causal connection exists between h[is] protected activity and the employer's action." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018). Defendant argues Plaintiff did not engage in any protected activity, and, alternatively, there was no causal link between his

protected activity and his termination. ECF 13 at 11–12. In response, Plaintiff reiterates that Defendant "retaliated against plaintiff because he refused non-job-related medical treatments and because he communicated his opposition to the policy." ECF 17 at 11. Defendant replies that Plaintiff's written objections to Arrow's COVID-19 policy are not protected activity because they never included requests for medical accommodation or opposed conduct prohibited by the ADA. ECF 18 at 8–9. Defendant also argues that Defendant terminated Plaintiff for noncompliance with the COVID-19 policy, not because of any alleged protected activity. *Id.* at 9.

Plaintiff provides no authority to support his contention that opposing his employer's COVID-19 policy was a "protected activity." *See* ECF 17 at 11. Even assuming it was, Plaintiff's claim fails because he has not demonstrated a causal link between his opinion opposing the policy and an adverse employment action.

To establish causation, a plaintiff must present "evidence of circumstances that justify an inference of retaliatory motive." *Lincoln*, 900 F.3d at 1209 (quotation omitted). The Supreme Court has likened this burden to a showing of "but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, – 570 U.S. 338, 346–47 (2013). The evidence of but-for causation "must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Plaintiff claims "he was fired for no other reason than his opposition to the [COVID-19] policy." ECF 17 at 13. However, Plaintiff fails to plausibly allege that but-for his opposition— i.e. his communications to his supervisors and Arrow's registered agent stating he opposed Arrow's COVID-19 policy—he would not have been terminated. In other words, Plaintiff alleges no facts that Defendant would not have terminated him had he never communicated his opposition to the COVID-19 policy but still refused to comply with it; nor does Plaintiff allege that Defendant would

17

have terminated him had he voiced his opposition to the policy but nonetheless complied with it by either getting vaccinated or requesting one of the readily available exemptions.

Instead, Plaintiff's allegations are clear that he was discharged because he refused *to comply* with the company-wide policy first announced on September 8, 2021, when all employees were told they had to be vaccinated or approved for an exemption by December 1, 2021. *E.g.*, ECF 1 ¶ 226 ("[E]ach adverse employment action . . . was causally related to plaintiff's good faith *refusal of the mitigation measures*." (emphasis added)); *id.* ¶ 227 ("Each adverse employment action took place . . . in direct response to . . . his good faith *refusal to comply with defendant's policy*." (emphasis added)); ECF 17 at 13 ("[W]hen [Plaintiff] did not comply with the demands of the 'Covid policy' he was retaliated against and fired. *There was no other reason he was terminated*." (emphasis added)). Adverse employment actions, including termination, based on an employee's refusal to comply with company-wide COVID-19 safety policies do not support a claim for retaliation under the ADA. *E.g.*, *Sharikov*, 103 F.4th at 171 (finding the plaintiff failed to plausibly plead a causal connection between his opposition to his employer's COVID-19 policy and his termination because "the allegations in the Complaint make clear that he was fired because of his failure to comply with the company-wide vaccine policy" and "the policy applied to all employees regardless of whether they had engaged in protected activity"); *Librandi*, 2023 WL 3993741, at *8 (finding no causation where "Plaintiff's factual allegations and the materials attached to her complaint do not suggest that [she] was terminated for objecting to [defendant]'s COVID-19 policy; rather, they suggest that she was terminated because she failed to comply with it."); *West*, 2023 WL 2632210, at *6 (finding it unreasonable to infer causal connection between plaintiff's criticism of employer's COVID-19 policy and his termination when he was terminated for refusing to comply with the policy).

Additionally, courts considering identical circumstances to those here have concluded that causation is not plausible when a defendant's COVID-19 policy—which was the grounds for the plaintiff's termination when he or she refused to comply—was enacted *before* the plaintiff spoke up in opposition to it. *E.g.*, *Jorgenson,* 2023 WL 1472022, at *6 ("Courts regularly dismiss retaliation complaints in these circumstances, because the consequences for non-compliance with the policy were established before any alleged protected activity occurred.") (collecting cases); *Johnson*, 2023 WL 2163774, at *7 (dismissing retaliation claim on the grounds that "[w]hile the plaintiff's refusal to comply with the defendant's COVID-19 policies was clearly the basis for her termination, the defendant adopted its policies before the plaintiff objected to vaccinations and masking"); *Lundstrom,* 2022 WL 17330842 at *6–7 ("Because [defendant's] COVID-19 mitigation and vaccination policies existed before Lundstrom opposed those policies, it is not reasonable to infer that there was a causal connection"); *Linne,* 2023 WL 3168587, at *3 (dismissing plaintiff's retaliation claim because plaintiff alleged no facts to show that "Defendant's communications with and termination of Plaintiff were anything other than its enforcement of a policy, in place before Plaintiff opposed it, that applied equally to all employees."). Plaintiff is clear "his opposition arose after the implementation of the policy." ECF 17 at 13. Thus, before Plaintiff voiced any opposition—i.e., engaged in the alleged protected activity—Arrow announced a company-wide policy and established December 1, 2021, as the deadline to comply with that policy. ECF 1-2 at 2. It is not plausible Plaintiff was terminated on December 1, 2021, because he voiced his opposition to the policy; rather Defendant simply executed the policy that was put in place *before* Plaintiff ever said anything. The outcome would have been the same had Plaintiff never voiced any opposition to the policy but refused to comply by the deadline.

As Plaintiff has failed to allege a plausible causal connection between any purported protected activity and Defendant's adverse employment actions, he has failed to allege one of the elements of his retaliation claim. Therefore, the Court recommends his retaliation claim be dismissed.

## III.    Violation of the ADA by Inquiries and Examinations

Finally, Plaintiff claims that Defendant, through its COVID-19 policy, imposed prohibited disability-related inquiries and medical examinations on him. ECF 1 ¶¶ 239–283. Specifically, Plaintiff identifies the "disability-related medical inquiries and examinations" to include "inquiring about 'vaccination status'; 'health surveys'; and regular 'Covid testing'." *Id.* ¶ 245. Defendant argues this claim fails because, *inter alia*, inquiries into COVID-19 infection or vaccination status are not medical inquiries under the ADA. ECF 13 at 13. The Court agrees.

The ADA does not forbid all medical inquiries, but only those as to whether an employee "is an individual with a disability or as to the nature or severity of the disability." 42 U.S.C. § 12112(d). As discussed in detail above, being unvaccinated against COVID-19 or being perceived as potentially having COVID-19 are not disabilities under the ADA. Thus, any alleged inquiry as to an employee's vaccination or infection status for COVID-19 is not an inquiry as to whether that employee "is an individual with a disability or as to the nature or severity of the disability." 42 U.S.C. § 12112(d)(4)(A). *See also, e.g.*, *Monegas*, 2023 WL 5671933, at *3 ("[T]he City's alleged inquiries as to an employee's vaccination status does not amount to a disability-related inquiry recognized under the ADA."); *Shigley*, 2024 WL 1156613, at *7 ("Because the Court has concluded that Plaintiff's unvaccinated status is not a disability for the purposes of the ADA, it follows logically that "an inquiry about vaccination status does not implicate any disability.""); *Jorgenson*, 2023 WL 1472022, at *5 ("Conduent's [vaccination] attestation requirement did not

constitute a medical examination or an inquiry about a disability or disabling condition."); *Librandi*, 2023 WL 3993741, at *9 ("Requiring [plaintiff] to disclose her COVID-19 vaccination status does not run afoul of the ADA."); *Johnson v. Maximus Servs. LLC*, No. 22-cv-02935, 2023 WL 5612826, at *5 (E.D.N.Y. Aug. 30, 2023) (dismissing claim because inquiries into plaintiff's vaccination status could only reveal "the plaintiff's vaccination status or a temporary Covid-19 infection, neither of which is a disability under the ADA").

Similarly, requiring employees to be vaccinated against COVID-19—subject to reasonable medical and religious exemptions—take COVID-19 tests, or engage in other preventative actions, like wearing a mask, do not constitute prohibited inquiries or medical examinations under the ADA. The EEOC's COVID-19 guidance unequivocally states that the ADA does *not* preclude an employer from requiring all employees to be vaccinated against COVID-19, subject to reasonable accommodations for employees with disabilities or sincerely held religious beliefs. *See* WHAT YOU SHOULD KNOW ABOUT COVID-19 AND THE ADA, THE REHABILITATION ACT, AND OTHER EEO LAWS,https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation -act-and-other-eeo-laws (last visited August 8, 2024) ("The federal EEO laws do not prevent an employer from requiring all employees to be vaccinated against COVID-19, subject to the reasonable accommodation provisions of Title VII and the ADA. . . If there is such an employer requirement, the EEO laws do not prevent employers from requiring documentation or other confirmation that employees are up to date on their vaccinations."). And other courts considering this question have consistently rejected ADA medical inquiry and examination claims based on employer COVID-19 vaccination, testing, or masking requirements. *E.g.*, *Chancey v. BASF Corp.*, No. 22-cv-00034, 2022 WL 18438375, at *4 (S.D. Tex. Dec. 29, 2022) (Plaintiff's claims that his employer required him to submit to weekly COVID-19 testing, imposing distance requirements,

and masking did not constitute disability-related inquiries or medical examinations); *Sharikov*, 659 F. Supp. 3d at 288 ("Plaintiff has not alleged facts plausibly suggesting that . . . COVID-19 testing, and daily temperature screenings are inquiries or medical examinations that 'would reveal disabilities.'"); *McCone v. Exela Techs., Inc.*, No. 21-cv-00912, 2022 WL 801772, at *4 (M.D. Fla. Jan. 14, 2022) (finding no ADA violation where an employer required COVID-19 testing because "COVID-19, standing alone, does not meet the ADA's definitions of disability or impairment" so "a COVID-19 test is not likely to reveal a disability."): *Bearbower v. Olmsted Med. Ctr.*, 668 F. Supp. 3d 831, 842 (D. Minn. 2023) ("To the extent that Plaintiffs allege the vaccine requirement violated § 12112(d)(4)(A), the allegation fails to state a claim because a vaccine is not a procedure that seeks information about Plaintiffs' health and is not an inquiry into whether Plaintiffs have a disability."). Accordingly, Plaintiff has failed to plausibly allege a claim for an unlawful medical examination or disability-related inquiry under the ADA. The Court recommends this claim be dismissed.

## IV.    Dismissal With Prejudice

Generally,  the dismissal of claims under Rule 12(b)(6) should be without prejudice. *Baayer v. Shader*, No. 18-cv-01216, 2018 WL 5619320, at *2 (D. Colo. Oct. 30, 2018). However, dismissal with prejudice is appropriate "if it would be futile to allow the plaintiff an opportunity to amend." *Serna v. Denver Police Dep't*, 58 F.4th 1167, 1172 (10th Cir. 2023) (quotation omitted); *see also Triplett v. LeFlore Cty., Okla.*, 712 F.2d 444, 446 (10th Cir. 1983) ("In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely if it appears at all possible that the plaintiff can correct the defect." (quotation omitted)). Here, Plaintiff cannot plausibly allege that Arrow's COVID-19 policy or his termination violated the ADA. Thus, further amendment concerning his claims would be futile. Accordingly, the Court recommends his claims be dismissed

with prejudice. *See, e.g.*, *Lundstrom*, 2022 WL 17330842 (finding amendment of ADA claims substantially similar to those in this case to be futile and dismissing with prejudice), at *5; *Librandi*, 2023 WL 3993741, at *11 (same); *Johnson*, 2023 WL 11796098, at *15 n.15 (same).

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends **granting** Defendant's Motion to Dismiss [ECF 13] and **dismissing with prejudice** Plaintiff's claims against Respectfully submitted this 12th day of August, 2024, at Denver, Colorado.    Defendant.[4]

BY THE COURT:

s/ James P. O'Hara

James P. O'Hara
United States Magistrate Judge

---

[4] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).